2009 Ark. App. 858

**Charissa Leatherwood BLACKERBY, Appellant**

v.

**ARKANSAS DEPARTMENT OF HUMAN SERVICES, J.B., and J.B., minor children, Appellees.**

**No. CA 09–725.**

Court of Appeals of Arkansas.

Dec. 16, 2009.

Shannon Holloway Underwood, Arkansas Public Defender Comm'n, Little Rock, for appellant.

Leah Beth Lanford, Little Rock, for appellee.

Tabitha Baertels McNulty, Office of Chief Counsel, for appellee.

ROBERT J. GLADWIN, Judge.

Appellant Charissa Leatherwood Blackerby appeals the order of the Benton County Circuit Court terminating her parental rights with respect to her minor children, J.B. 1 and J.B. 2. Appellant's sole argument on appeal is that the termination of her parental rights should be reversed because service of the petition to terminate by warning order was not sufficient. We affirm.

This case began on July 5, 2008, when appellee Arkansas Department of Human Services (ADHS) exercised a seventy-two-hour hold on appellant's minor children due to drugs in the babies' systems and births that were ten-weeks premature. They had received no prenatal care and were suffering symptoms of withdrawal from the drugs in their systems. A probable-cause hearing was held on July 15, 2008, at which appellant was present with

her court-appointed attorney, and the circuit court found that probable cause existed and ordered that the children remain in the custody of ADHS. Appellant was granted supervised visitation and ordered to (1) enter and successfully complete inpatient drug and alcohol treatment, (2) submit to drug testing, and (3) refrain from the use or possession of illegal substances and drug paraphernalia.

An adjudication hearing was held on September 2, 2008, at which time the circuit court determined that the children were dependent-neglected based on (1) appellant's failure to provide items necessary for their well-being, citing her addiction to illegal substances; (2) lack of suitable housing; and (3) lack of stable employment. The circuit court also found that appellant failed to take reasonable action to protect the children from neglect or parental unfitness and that she failed to provide for the essential physical, mental, or emotional needs of the children. The circuit court also found that appellant failed to provide medical care for the children and caused them both to be born with illegal substances in their bodies. The circuit court set reunification as the goal of the case. Appellant was not present for this hearing, but her court-appointed attorney was in attendance. The circuit court noted that she failed to appear before the court "despite proper notice."

On September 30, 2008, ADHS filed a petition for the termination of appellant's parental rights, identifying the mother as "Charissa Blackerby ... whose last known address was 1408 W. Bonnie Lane in Rogers, Arkansas," and stated that "as of September 29, 2008, [ADHS] has confirmed that the mother no longer resides at 1408 W. Bonnie Lane ... and her whereabouts are completely unknown." The petition indicated that appellant had entered inpatient-drug treatment on July 22, 2008,

but voluntarily left on August 1, 2008, without completing the program, further asserted that her whereabouts had been unknown since August 1, 2008, and that "as of September 29, 2008, [appellant] has made no attempts to contact [ADHS], her attorney, or exercise visitation with the juveniles since on or before August 1, 2008." It is undisputed that the petition was served on appellant's court-appointed attorney.

An affidavit of service was filed by the legal secretary to the Office of Chief Counsel of ADHS. A warning order was published in the *Arkansas Democrat–Gazette* on October 3 and October 10, 2008. The affidavit included a statement that "after diligent search and inquiry, one and/or all of [the parents'] whereabouts remain unknown to [ADHS]" and stated that ADHS had mailed the notices, a summons, and a copy of the petition for termination of parental rights to appellant, certified mail, restricted delivery, to the last-known address at 1408 W. Bonnie Lane. The warning order identified appellant as the mother, identified the father, and listed the children by their full names and dates of birth.

A termination hearing was held on December 2, 2008, at which time the circuit court indicated that appellant's parental rights would be terminated with respect to the children and that they would remain in foster care pending additional decisions with regard to possible placement with their father. There was an additional hearing on February 10, 2009, to reconsider the issue of whether service of process was proper with respect to the petition to terminate appellant's parental rights. At that time, there was further discussion by ADHS's attorney that ADHS had been looking for appellant under the names of Blackerby, Key, and the various names of the fathers of her seven children, but none

of them was Leatherwood, which was the name appellant was apparently using at the time. Appellant attended that hearing and explained that she had been incarcerated and did not know about the December 2, 2008 hearing. She acknowledged that her driver's license and social security card were issued under the name of Blackerby, the name she had been using throughout her dealings with ADHS. The circuit court granted ADHS's petition to terminate parental rights pursuant to an order filed on April 7, 2009, and appellant filed a timely notice of appeal on April 21, 2009.

## Standard of Review

In cases involving the termination of parental rights, there is a heavy burden placed on the party seeking to terminate the relationship. *Camarillo–Cox v. Ark. Dep't of Human Servs.*, 360 Ark. 340, 201 S.W.3d 391 (2005). This is because termination of parental rights is an extreme remedy in derogation of the natural rights of the parents. *Id.* Nevertheless, parental rights will not be enforced to the detriment or destruction of the health and well-being of the child. *Id.* Thus, parental rights must give way to the best interest of the child when the natural parents seriously fail to provide reasonable care for their minor children. *Id.*

Arkansas Code Annotated § 9–27–341(b)(3) (Repl.2008) requires that an order terminating parental rights be based upon clear and convincing evidence. *See also Dinkins* v. *Ark. Dep't of Human Servs.*, 344 Ark. 207, 40 S.W.3d 286 (2001). Clear and convincing evidence is that degree of proof that will produce in the factfinder a firm conviction as to the allegation sought to be established. *Id.* It is well settled that when the burden of proving a disputed fact is by clear and convincing evidence, the question that must be answered on appeal is whether the trial court's finding that the disputed fact was proved by clear and convincing evidence was clearly erroneous. *Id.* In making this determination, we review the case de novo but we give a high degree of deference to the trial court, as it is in a far superior position to observe the parties before it and to judge the credibility of the witnesses. *Id.* A finding is clearly erroneous when, although there is evidence to support it, the reviewing court on the entire evidence is left with a definite and firm conviction that a mistake has been made. *Id.*

The above-referenced standard of review applies when we are reviewing the sufficiency of the evidence supporting the termination of parental rights. Here, the sole issue is a challenge to the circuit court's finding of fact that the party attempting service by publication, ADHS, made a diligent search for the missing party to be served—appellant. Such a determination will not be reversed unless it is clearly erroneous. *See Smith v. Edwards*, 279 Ark. 79, 648 S.W.2d 482 (1983).

## Discussion

Rather than challenging the sufficiency of the evidence supporting the termination of her parental rights, appellant argues that the circuit court erred because service of the petition to terminate her parental rights was not proper. She submits that this question must be reviewed within the context of strict scrutiny and due process guaranteed by the United States Constitution. She cites *Armstrong v. Manzo*, 380 U.S. 545, 85 S.Ct. 1187, 14 L.Ed.2d 62 (1965), for the proposition that it is necessary that a restriction upon parental rights be in accordance with due process of law, and that the first requirement is that a defendant be given sufficient notice that her rights are to be challenged in the courts. She urges that the rights of a

party may not be adjudicated in the absence of notice to that party to the litigation. *See Mayberry v. Flowers,* 347 Ark. 476, 65 S.W.3d 418 (2002). Appellant urges that it should be the duty of the circuit court to make a determination as to whether proper service has been obtained before rendering judgment against a party.

Appellant argues that she was not properly served. She contends that because she was unaware of the proceedings, she did not challenge the authority of the circuit court to terminate her parental rights. Although the circuit court appointed an attorney to her, she claims not to have received actual notice of the termination hearing and maintains that constructive notice was improperly delivered. Accordingly, she asserts that she had no knowledge of the need to work with her counsel to maintain her rights.

Appellant cites Arkansas Code Annotated section 9–27–312 (Repl.2008) regarding the requirement that service of a petition for the termination of parental rights and notice of hearing or order must be obtained in the manner provided by Rule 4(f) (2008) of the Arkansas Rules of Civil Procedure, which states in pertinent part:

(1) If it appears by the affidavit of a party seeking judgment or his or her attorney that, after diligent inquiry, the identity or whereabouts of a defendant remains unknown, or if a party seeks a judgment that affects or may affect the rights of persons who are not and who need not be subject personally to the jurisdiction of the court, service shall be by warning order issued by the clerk. This subdivision shall not apply to actions against unknown tortfeasors.

(2) The warning order shall state the caption of the pleadings; include, if applicable, a description of the property or other res to be affected by the judg-

ment; and warn the defendant or interested person to appear within 30 days from the date of first publication of the warning order or face entry of judgment by default or be otherwise barred from asserting his or her interest. The party seeking judgment shall cause the warning order to be published weekly for two consecutive weeks in a newspaper having general circulation in the county where the action is filed and to be mailed, with a copy of the complaint, to the defendant or interested person at his or her last known address by any form of mail with delivery restricted to the addressee or the agent of the addressee.

Comment 12 of the Reporter's Notes to Rule 4 provides that the burden is on the party attempting service by publication to attempt to locate the missing or unknown defendant. Additionally, it states that such party or his attorney is required to demonstrate to the court, by affidavit or otherwise, that after diligent inquiry, the defendant's identity or whereabouts remains unknown.

Service was allegedly perfected by means of a warning order published in the *Arkansas Democrat–Gazette* on October 3 and October 10, 2008; however, appellant contends that this method of service was improper. Such constructive service is permitted by the Rules of Civil Procedure only when the whereabouts of the defendant are unknown "after diligent inquiry." *See* Ark. R. Civ. P. 4(f)(1). Because service by warning order is in derogation of common law, Rule 4(f) must be construed strictly, and compliance with its requirements must be exact. *See Smith v. Sidney Moncrief Pontiac, Buick, GMC Co.,* 353 Ark. 701, 120 S.W.3d 525 (2003). Appellant argues that ADHS failed to demonstrate to the circuit court, by affidavit or otherwise, that after diligent inquiry, her

identity or whereabouts remained unknown, as required by Rule 4(f).

Additionally, appellant argues that the circuit court violated her right to due process by terminating her parental rights without giving her proper notice. She cites *Mayberry, supra,* as an example where an appellate court noted that due process requires, at a *minimum,* notice reasonably calculated to afford a natural parent the opportunity to be heard prior to his or her parental rights being terminated. She claims that relatively simple, low-cost methods were available to ADHS to help locate her, but it failed to utilize them or even inquire as to their availability. She urges that ADHS failed to adhere to the State's enunciated standards for ensuring procedural due process, which constitutes a violation of her procedural due-process rights.

■ We hold that appellant's argument is without merit because it is not preserved for review. Appellant's attorney was provided with notice pursuant to Rule 5 (2008) of the Arkansas Rules of Civil Procedure, and ADHS satisfied the requirement of diligent inquiry provided in Rule 4. There were two hearings in this matter. The initial hearing took place on December 2, 2008, and was set to determine whether ADHS's petition for termination of parental rights should be granted. Appellant was represented by counsel at that hearing, and the circuit court did terminate her parental rights as to the two minor children. The second hearing took place on February 10, 2009, in which appellant, by and through the same attorney who represented her at the first hearing, asked the circuit court to set aside the first ruling because of improper service.

Despite appellant's apparent failure to file any type of formal posttrial motion, or even make an oral motion at the first hearing, the circuit court afforded her a second hearing on this issue. At no time during the first hearing—while her parental rights were at stake—was an objection made or a ruling requested on the issue of whether service was proper. *See Madden v. Aldrich,* 346 Ark. 405, 58 S.W.3d 342 (2001) (holding that the failure to obtain a ruling from the lower court is a procedural bar to consideration of the issue on appeal). Appellant concedes in her brief that she did not challenge the authority of the circuit court to terminate her parental rights at the first hearing due to improper notice and service, but blames her failure to do so on lack of service. While appellant was not in attendance at that hearing, her attorney was present. At that hearing, appellant's ex-husband explained that appellant was likely in the Washington County Detention Center, and that he could not remember all her previous last names that she could be listed under while there. ADHS's attorney, as well as appellant's counsel, listened as the bailiff searched the inmate list at the detention center and at the Arkansas Department of Correction, after which appellant's attorney stated that appellant's last-known address was invalid and that appellant knew how to get in touch with her attorney. Appellant's attorney made no other statements or motions on appellant's behalf, which constitutes a waiver of any objection to the entry of the order of termination. Accordingly, this issue is not preserved for our review.

■ Additionally, appellant has relied on the incorrect rule of civil procedure. Based on our review of the record, it is clear that appellant was represented by counsel throughout these proceedings, and service was properly made on counsel of record pursuant to Rule 5 of the Arkansas Rules of Civil Procedure (2008), which states in relevant part:

(b) Service: How Made.

(1) Whenever under this rule or any statute service is required or permitted to be made upon a party represented by an attorney, the service shall be upon the attorney, except that service shall be upon the party if the court so orders or the action is one in which a final judgment has been entered and the court has continuing jurisdiction.

(2) Except as provided in paragraph (3) of this subdivision, service upon the attorney or upon the party shall be made by delivering a copy to him or by sending it to him by regular mail or commercial delivery company at his last known address or, if no address is known, by leaving it with the clerk of the court. Delivery of a copy for purposes of this paragraph means handing it to the attorney or to the party; by leaving it at his office with his clerk or other person in charge thereof; or, if the office is closed or the person has no office, leaving it at his dwelling house or usual place of abode with some person residing therein who is at least 14 years of age. Service by mail is presumptively complete upon mailing, and service by commercial delivery company is presumptively complete upon depositing the papers with the company. When service is permitted upon an attorney, such service may be effected by electronic transmission, provided that the attorney being served has facilities within his office to receive and reproduce verbatim electronic transmissions. Service by a commercial delivery company shall not be valid unless the company: (A) maintains permanent records of actual delivery, and (B) has been approved by the circuit court in which the action is filed or in the county where service is to be made.

As such, the circuit court had jurisdiction. It was appellant's responsibility to stay informed and keep her attorney informed of her current address. Appellant attended a staffing meeting with her attorney in August 2008; she was aware of the name and location of the attorney; and she even left the attorney a message at some point in the proceedings with no return number. ADHS fulfilled its obligation to serve appellant's attorney with the petition for termination, and the circuit court had proper jurisdiction to proceed in the matter, with or without appellant's presence.

The circuit court acknowledged that it moved cautiously on notice proceedings when dealing with something as fundamental as parental rights, but noted that appellant had been represented by counsel since the day the case started, was out of jail at the time when the petition and warning order were filed, and made no contact with her attorney during the time she was out of jail. The circuit court then made a finding that the notice was sufficient to support the termination. We find no error on the part of the circuit court; accordingly, we affirm.

Affirmed.

PITTMAN and HART, JJ., agree.