Rebecca CAUSER *v.*
ARKANSAS DEPARTMENT of HUMAN SERVICES

CA 05-464                                              220 S.W.3d 270

Court of Appeals of Arkansas

Opinion delivered December 14, 2005

[Rehearing granted January 11, 2006.]

*Kimberly Johnson*, for appellant.

*Deanna S. Evans*, Attorney *Ad Litem*, for the children.

ANDREE LAYTON ROAF, Judge. This appeal arises from the Marion County Circuit Court granting a petition filed by appellee, Arkansas Department of Human Services (ADHS), to terminate the parental rights of appellant, Rebecca Causer, in a dependency-neglect action. Causer's attorney has filed a no-merit brief and a motion to withdraw, and Causer has filed a letter stating her pro se points for reversal. We must order rebriefing because counsel has failed to address all adverse rulings that occurred during the termination hearing.

Appellant Rebecca Causer is a thirty-two-year-old single mother of three children. On March 7, 2003, ADHS removed three children from her home because she was arrested for possession of methamphetamine. At the time they were removed from the home, the children were the following ages: D.M., age twenty months; B.C., age seven; and K.C., age thirteen. K.C. has cerebral palsy. Probable cause to remove the children was found on April 5, 2003. An adjudication that the juveniles were in need of services and were dependent/neglected was made on April 9, 2003. Reunification was set as the goal of the case and Causer was ordered to undergo a drug evaluation and random drug testing, to attend parenting classes, and to receive job skills training.

ADHS provided Causer with intensive family services, homemaker services, transportation, budgeting, and family/individual counseling. After treatment, Causer remained clean and sober, and she was put on probation for her criminal charges. Approximately nine months after the children were removed, they were returned to Causer's care on a trial placement in December 2003.

During a March 10, 2004 hearing, it was revealed that Causer had been arrested due to prescription drugs being found on her person. On March 12, 2004, the children were returned to

foster care because of Causer's arrest for disorderly conduct at her children's day clinic. K.C. and B.C. were behind in school and D.M. had lost twenty-five percent of her body weight during the time she was in her mother's care. During the three months that Causer had the children, she had been arrested three times. Causer's probation was then revoked because she tested positive for drugs. On March 22, 2004, the trial court found that there was probable cause to place the children back into foster care.

The permanency planning hearing continued the goal of reunification. The trial court found that Causer should have another chance to comply with the case plan to get her children back and to resolve her criminal issues. The trial court allowed B.C. to be placed in the custody of his father. On September 8th and 15th, a fifteen-month permanency planning hearing was held. At this hearing, the trial court found that Causer had not complied with the case plan and other orders of the court. Specifically, she continued smoking in the home, she failed to work on menus for nutritional meals, and she did nothing of her own volition and relied solely on assistance. The trial court found that reunification could not occur within a reasonable time frame consistent with the children's needs and that Causer does not know how to be a mother.

The termination hearing began on December 8, 2004. Melinda Fulton, a clinical social worker and therapist for K.C., testified that Causer has trouble treating K.C. like a child and Causer inappropriately divulges information to her. She also stated that K.C. was thrust into a parenting role with D.C. when Causer was not doing a good parenting job.

Diana Mitchell, a caseworker for ADHS, testified that ADHS has offered Causer numerous services and that there were no other services they could offer to Causer. She stated that she thought Causer was capable of parenting but that Causer was just not doing it.

Glenn Blacksher, one of the foster parents for the children, testified that he had noticed a positive change in Causer and noted that she was participating in drug court. He stated that the children were doing well in his home. Sharon Blacksher, the other foster parent, also stated that the children were doing well in their care. Sharon Blacksher stated that she thought it was in the children's best interest to return home to Causer.

Causer testified that she was participating in a drug court program. She stated that she had been clean for six months. She

wanted her children back and stated that she had done her best to comply with the case plan. She has been diagnosed with OCD and has been taking her medication. She completed the OMART rehabilitation program. She kept up with after-care meetings while someone was "looking over her shoulder." When it was up to her, though, she did not keep up with her after-care. K.C. testified at the hearing, and she stated that she wanted to live with her mother.

The trial court found that the conditions that caused removal from the home, drug use, had not been remedied and that Causer has manifested the incapacity to remedy subsequent issues (the inability to effectively parent) that have arisen since the original petition. The order stated that Causer has not demonstrated the ability to focus on her children while attending to her own needs. The trial court terminated the parental rights of Causer as to her three children. The trial court ordered K.C. and D.M. to be placed for adoption as a sibling unit and gave sole custody of B.C. to his father.

Causer now appeals the trial court's order terminating her parental rights. Our standard of review in termination-of-parental rights cases is well-settled.

> When the issue is one involving the termination of parental rights, there is a heavy burden placed upon the party to terminate the relationship. Termination of parental rights is an extreme remedy and in derogation of the natural rights of the parents. Parental rights, however, will not be enforced to the detriment or destruction of the health and well-being of the child. The facts warranting termination of parental rights must be proven by clear and convincing evidence, and in reviewing the trial court's evaluation of the evidence, we will not reverse unless the court's finding of clear and convincing evidence is clearly erroneous. Clear and convincing evidence is that degree of proof which will produce in the fact finder a firm conviction regarding the allegation sought to be established. In resolving the clearly erroneous questions, we must give due regard to the opportunity of the trial court to judge the credibility of witnesses. Additionally, we have noted that in matters involving the welfare of young children, we will give great weight to the trial judge's personal observations.

> An order forever terminating parental rights must be based upon clear and convincing evidence that the termination is in the best interests of the child, taking into consideration the likelihood that the child will be adopted and the potential harm caused by

continuing contact with the parent. In addition to determining the best interests of the child, the court must find clear and convincing evidence that the circumstances exist that, according to the statute, justify terminating parental rights. (Citations omitted.)

*Johnson v. Ark. Dep't of Human Servs.*, 78 Ark. App. 112, 119, 82 S.W.3d 183, 187 (2002).

Our termination statute, Arkansas Code Annotated section 9-27-341 (Supp. 2003), states:

(b)(1)(A) The circuit court may consider a petition to terminate parental rights if the court finds that there is an appropriate permanency placement plan for the juvenile.

. . . .

(3) An order forever terminating parental rights shall be based upon a finding by clear and convincing evidence:

(A) That it is in the best interest of the juvenile, including consideration of the following factors:

(i) The likelihood that the juvenile will be adopted if the termination petition is granted; and

(ii) The potential harm, specifically addressing the effect on the health and safety of the child, caused by continuing contact with the parent, parents, or putative parent or parents, and

(B) Of one (1) or more of the following grounds:

(i)(a) That a juvenile has been adjudicated by the court to be dependent-neglected and has continued out of the custody of the parent for twelve (12) months and, despite a meaningful effort by the department to rehabilitate the parent and correct the conditions that caused removal, those conditions have not been remedied by the parent.

. . . .

(vii)(a) That other factors or issues arose subsequent to the filing of the original petition for dependency-neglect that demon-

strate that return of the juvenile to the custody of the parent is contrary to the juvenile's health, safety, or welfare and that, despite the offer of appropriate family services, the parent has manifested the incapacity or indifference to remedy the subsequent issues or factors or rehabilitate the parent's circumstances that prevent return of the juvenile to the custody of the parent.

Causer's attorney has filed a motion to withdraw and a no-merit brief pursuant to *Linker-Flores v. Ark. Department of Human Services*, 359 Ark. 131, 194 S.W.3d 739 (2004). Causer did not appeal from final orders from the adjudication hearing, review, and permanency-planning hearings. Thus, we are precluded from reviewing any adverse rulings from these portions of the record. *See Lewis v. Ark. Dep't of Human Servs.*, 364 Ark. 243, 217 S.W.3d 788 (2005). Pursuant to Ark. R. App. P.–Civ. 2(c)(3), our review of the record for adverse rulings is limited to the termination hearing. *See id.* No-merit briefs in termination-of-parental-rights cases "shall include an argument section that consists of a list of all rulings adverse to the defendant made by the circuit court on all objections, motions, and requests made by either party with an explanation as to why each adverse ruling is not a meritorious ground for reversal." *See* Ark. Sup. Ct. R. 4-3(j); *Lewis, supra.* If a no-merit brief fails to address all the adverse rulings, we will generally send it back for rebriefing. *Lewis, supra; Linker-Flores v. Ark. Dep't of Human Servs.*, 364 Ark. 224, 217 S.W.3d 107 (2005) ("*Linker-Flores II*").

In this case, our review of the record reveals at least three rulings adverse to Causer in the termination hearing that were not abstracted or included in the argument sections. Causer made a hearsay objection during the testimony of Melinda Fulton, which the trial court overruled. ADHS objected to speculative testimony by Causer, and the trial court sustained the objection. During Causer's testimony, the trial court allowed a letter into evidence over Causer's objection. Because these adverse rulings were not abstracted and discussed, counsel's brief fails to comply with the requirements of Ark. Sup. Ct. R. 4-3(j) and supreme court precedent. *See Linker, supra; Lewis, supra.* Accordingly, we deny counsel's motion to withdraw and order rebriefing.

Rebriefing ordered.

GRIFFEN and VAUGHT, JJ., agree.

489

## SUPPLEMENTAL OPINION UPON
## GRANT OF REHEARING
## JANUARY 11, 2006

Appeal from Marion Circuit Court; *Gary Isbell*, Judge;

*Kimberly H. Johnson*, for appellant.

*Deanna S. Evans*, Attorney *Ad Litem*, for the children.

ANDREE LAYTON ROAF, Judge. We previously rendered a decision in this case in which we ordered rebriefing for failure to comply with the requirements of *Linker-Flores v. Ark. Dep't of Human Servs.*, 364 Ark. 224, 217 S.W.3d 107 (2005), and *Lewis v. Ark. Dep't of Human Servs.*, 364 Ark. 243, 217 S.W.3d 788 (2005). *See Causer v. Ark. Dep't of Human Servs.*, 93 Ark. App. 483, 220 S.W.3d 270 (2005). In response our opinion, Causer's attorney has petitioned this court to reconsider its order to rebrief, contending that rebriefing in this case would cause further delay and that the four adverse rulings that were not fully discussed in the brief are not meritorious. After reviewing this case, we have treated the petition as a petition for rehearing, and we agree with Causer's attorney and affirm this case.

Causer's attorney has filed an attachment to her motion to reconsider that specifically addresses and discusses all adverse rulings in the termination hearing. The attachment complies substantively with the requirements for argument sections of termination-of-parental-rights no-merit briefs as set out in *Linker-*

Flores, *supra*, and *Lewis*, *supra*; therefore, rebriefing in this case is no longer necessary. After a review of the record, we find that all adverse rulings are clearly not meritorious. We affirm today without rebriefing so as to avoid any further delay of this case and grant the motion to withdraw as counsel.

PITTMAN, C.J., BIRD, GRIFFEN, VAUGHT, and NEAL, JJ., agree.