

SLIP OPINION

Cite as 2015 Ark. App. 458

# ARKANSAS COURT OF APPEALS

DIVISION II
No. CV-14-914

| | |
|---|---|
| JASMINE HOLLOWAY<br>APPELLANT | **Opinion Delivered** September 9, 2015 |
| V. | APPEAL FROM THE GARLAND COUNTY CIRCUIT COURT<br>[NO. 26JV-14-129] |
| ARKANSAS DEPARTMENT OF HUMAN SERVICES AND MINOR CHILD<br>APPELLEES | HONORABLE VICKI SHAW COOK, JUDGE<br><br>AFFIRMED |

## PHILLIP T. WHITEAKER, Judge

Appellant Jasmine Holloway appeals from the order of the Garland County Circuit Court terminating her parental rights to her daughter, G.H. On appeal, Holloway contends that the circuit court erred in finding G.H. to be dependent-neglected, in finding aggravated circumstances as a basis for terminating her parental rights, and in "fast-tracking" the termination of her parental rights. We affirm.

### I. *Background and Procedural History*

Prior to the instant case, Holloway had a history with the Arkansas Department of Human Services (DHS) revolving around the status of her mental health and her supervision of G.H. In 2010, there was an unsubstantiated referral for inadequate supervision. Later that year, there was a true referral for threat of harm, suffocation, and inadequate supervision.

DHS maintained an open protective-services case for three months in 2010, followed by an open foster-care case from August 2010 through February 2012.

The instant case began with a January 2014 hotline report to the Garland County Division of Children and Family Services (DCFS), which indicated that Therapeutic Family Services had tried to have Holloway committed due to her schizophrenia, her failure to take her medication, and her paranoia and agitation. Approximately one month later, in February 2014, the Garland County DCFS received another hotline report that G.H. had been taken first to National Park Hospital and then to Arkansas Children's Hospital, suffering from dystonic symptoms that were consistent with having taken an overdose of medication. DHS placed a seventy-two-hour hold on G.H. at that time.

After the seventy-two-hour hold, DHS filed a petition for emergency custody and dependency-neglect, which the circuit court granted in an order entered the next day. Six days later, the court entered a probable-cause order in which it cited DHS's previous history with the family and determined that there was probable cause that the emergency conditions that necessitated removal of G.H. from Holloway's custody continued.

Three months later, the circuit court entered an adjudication order in which it found G.H. to be dependent-neglected. The court found that G.H. suffered from abuse and neglect due to Holloway's failure to appropriately supervise G.H., which resulted in G.H.'s being left alone at an inappropriate age, thus creating a dangerous situation or a situation that put the juvenile at risk of harm. Regarding the cause of G.H.'s hospitalization and Holloway's failure to appropriately supervise, the court specifically stated that it found

that the testimony of Dr. Karen Farst is highly credible and that the juvenile could have died due to the ingestion of the mother's prescribed anti-psychotic medication found in the juvenile's system or the juvenile could have suffered permanent damage, and finds that the mother is very hostile and angry, that she has not submitted to therapy, and that she cannot keep the juvenile safe. The Court further finds that the juvenile has spent three-fourths of her life out of the mother's custody.

Based upon this, the court concluded as follows:

> The Court finds by clear and convincing evidence that the juvenile was subjected to aggravated circumstances in that the juvenile was subjected to extreme cruelty and that said neglect and abuse inflicted upon the juvenile could endanger the life of the child, and finds by clear and convincing circumstances that there is little likelihood that services to the family will result in successful reunification, especially in light of the facts of this case and the family's history with the Department.

The court declared that the goal of the case would be adoption. Holloway did not appeal from this adjudication order.

DHS subsequently filed a petition for termination of parental rights. As grounds, DHS cited Arkansas Code Annotated section 9-27-341(b)(3)(B)(ix)(a)(3)(A)&(B) (Repl. 2009), which provides for termination when a parent has subjected a juvenile to aggravated circumstances. As defined, "aggravated circumstances" means that a juvenile has been abandoned, chronically abused, subjected to extreme or repeated cruelty, sexually abused, or a determination has been made by a judge that there is little likelihood that services to the family will result in successful reunification.[1]

---

[1] DHS also alleged statutory grounds under section 9-27-341(b)(3)(B)(vi)(a) (the court has found the juvenile dependent-neglected as a result of neglect or abuse that could endanger the life of the child) and section 9-27-341(b)(3)(B)(vii)(a) (the "subsequent issues or factors" statutory ground). Because Holloway's arguments on appeal pertain to the court's "aggravated–circumstances" findings, it is unnecessary to discuss these other two factors further.

 

After a hearing, the circuit court granted the petition to terminate Holloway's parental rights. In its written order, the court noted that Holloway had been found to have subjected G.H. to aggravated circumstances and that its previous adjudication of aggravated circumstances had not been appealed. Specifically, the court cited G.H.'s exposure to antipsychotic medications that caused her to suffer a realistic and serious threat of death. The court also noted its previous findings, "by clear and convincing evidence at the adjudication hearing, that the juvenile was subjected to aggravated circumstances in that she was subjected to extreme cruelty and that said neglect and abuse inflicted upon the juvenile could endanger the life of the child, and . . . that there is little likelihood that services to the family will result in successful reunification especially in light of the facts of this case and the family's extensive history with the Department." Citing testimony presented during the hearing, the court also found that G.H. was adoptable and stated that it considered the potential harm to G.H.'s health and safety if she were returned to Holloway's custody. The court therefore granted DHS's petition to terminate Holloway's parental rights.

## II. *Aggravated Circumstances*

Holloway's first argument on appeal is that the circuit court erred "in finding dependency-neglect against the mother" based on its finding of aggravated circumstances. Her second point on appeal is that the court erred in finding aggravated circumstances and cruelty as bases for termination of her parental rights. Both of these arguments pertain to the circuit court's determination in the adjudication order that G.H. was dependent-neglected and had been subjected to aggravated circumstances.



An adjudication order is an appealable order in a dependency-neglect proceeding. Ark. Sup. Ct. R. 6-9(a)(1)(A) (2014). In termination cases, a challenge to a finding of aggravated circumstances must be made, if at all, in an appeal from the adjudication order. *Willingham v. Ark. Dep't of Human Servs.*, 2014 Ark. App 568; *Hannah v. Ark. Dep't of Human Servs.*, 2013 Ark. App. 502. Where a party fails to appeal from an adjudication order in which an aggravated-circumstances finding is made, she is precluded from asserting error with respect to that finding on appeal from an order terminating parental rights. *See Anderson v. Ark. Dep't of Human Servs.*, 2011 Ark. App. 791, 387 S.W.3d 311; *Krass v. Ark. Dep't of Human Servs.*, 2009 Ark. App. 245, 306 S.W.3d 14. Accordingly, we are unable to reach either of Holloway's first two arguments on appeal.

### III.  *"Fast-Tracking" Termination*

Holloway's third argument on appeal is that the circuit court erred and abused its discretion in "fast-tracking" the termination of her parental rights and "denying her the court's usual provision of rehabilitative services and a permanency planning process." This argument was never presented to the circuit court, however, and it is thus not preserved for our review. *Samuels v. Ark. Dep't of Human Servs.*, 2014 Ark. App. 527, 443 S.W.3d 599; *Cushman v. Ark. Dep't of Human Servs.*, 2013 Ark. App. 3 (we will not consider arguments raised for the first time on appeal); *Gilmore v. Ark. Dep't of Human Servs.*, 2010 Ark. App.

614, 379 S.W.3d 501.[2] The circuit court's order terminating Holloway's parental rights is therefore affirmed.

Affirmed.

VAUGHT and HIXSON, JJ., agree.

*Kearney Law Offices*, by: *Jeffery H. Kearney*, for appellant.

*Tabitha Baertels McNulty*, Office of Policy & Legal Services, for appellee.

*Chrestman Group, PLLC*, by: *Keith L. Chrestman*, attorney ad litem for minor children.

---

[2] Even if we were to reach the merits of Holloway's arguments, we would find no merit to them. Holloway complains that no permanency-planning process was allowed prior to DHS's decision to seek termination. There is no requirement in Arkansas law, however, that a permanency-planning hearing be held prior to the filing of a petition to terminate parental rights. *See* Ark. Code Ann. § 9-27-338(b)(1)(A) (Repl. 2009) ("This section does not prevent the Department of Human Services or the attorney ad litem from filing at any time prior to the permanency planning hearing a . . . [p]etition to terminate parental rights."); Ark. Code Ann. § 9-27-338(b)(2) ("A permanency planning hearing is not required prior to [a petition to terminate parental rights]."); Ark. Code Ann. § 9-27-341(b)(1)(B) ("This section does not require that a permanency planning hearing be held as a prerequisite to the filing of a petition to terminate parental rights or as a prerequisite to the court's considering a petition to terminate parental rights.").