Cite as 2022 Ark. App. 33

# ARKANSAS COURT OF APPEALS
DIVISION IV
**No.** CV-20-695

| | |
|---|---|
| ELIZABETH GARNER <br> APPELLANT <br><br> V. <br><br> ARKANSAS DEPARTMENT OF HUMAN SERVICES AND MINOR CHILD <br> APPELLEES | **Opinion Delivered** January 26, 2022 <br><br> APPEAL FROM THE SEBASTIAN COUNTY CIRCUIT COURT, FORT SMITH DISTRICT [NO. 66FJV-18-427] <br><br> HONORABLE R. GUNNER DELAY, JUDGE <br><br> AFFIRMED |

## STEPHANIE POTTER BARRETT, Judge

Elizabeth Garner appeals the Sebastian County Circuit Court's termination of her parental rights to her daughter, P.G., born on October 6, 2017. On appeal, she argues that the circuit court abused its discretion by excluding witness testimony regarding the circumstances surrounding P.G.'s removal and that the circuit court erred by finding the ground for termination as failure to remedy the issues causing removal against her. We affirm the termination of her parental rights.

The Arkansas Department of Human Services (DHS) removed P.G. from the home of Elizabeth and Mark Garner on October 25, 2018, after Mark,[1] P.G.'s father, was arrested for maintaining a premises for drug sales and manufacturing within a drug-free zone. At the

---

[1]Mark Garner is not a party to this appeal.

time of his arrest, Mark was the only parent home with P.G.[2] because Elizabeth was in jail after being arrested for failing to appear on a theft-of-property charge approximately an hour to an hour and a half before Mark's arrest. At the time of P.G.'s removal, the police seized marijuana plants, which were being grown in the home, methamphetamine, and drug paraphernalia. A small amount of suspected marijuana, rolling papers, a pipe, and a grinder were found in the living room in an area that P.G. could access. A DHS caseworker went to the jail to drug screen Elizabeth; however, she was unable to provide a valid sample for a drug screen. Four days later, on October 29, DHS filed an ex parte petition for emergency custody and dependency-neglect, and an order granting custody was entered the same day. A probable-cause hearing was held on November 1, and the circuit court entered an order finding that probable cause existed to issue the ex parte order for emergency custody and that probable cause still existed, necessitating that the child remain in DHS custody pending adjudication.

An adjudication hearing was held on December 6, and in an order entered on December 11, the circuit court adjudicated P.G. dependent-neglected and set the goal of the case as reunification. In this order, the circuit court found that "the mother was only gone from the home for an hour and forty-five minutes and that the mother and father are married and residing in the same home." Elizabeth was ordered to obtain and maintain stable and appropriate housing, income, and transportation; complete parenting classes; either get her driver's license reinstated or apply for and obtain a driver's license; complete

---

[2]There was another individual in the home on the day of Mark's arrest who was living on the second floor.

a drug-and-alcohol assessment and follow the recommended treatment; visit regularly; submit to random drug screens and hair-follicle testing as requested by DHS; and resolve pending criminal issues.

A review hearing was held on April 11, 2019. In the review order, the circuit court continued the goal of reunification. The circuit court found that Elizabeth did not have stable and appropriate housing and income but that she had transportation that was insured; and she had completed parenting classes and a drug-and-alcohol assessment, but she had not started any treatment. The circuit court found that Elizabeth visited regularly with P.G., partially complied with the requests for drug screens and hair-follicle tests (missing the first one but attending the second), and tested positive for illegal substances.

A permanency-planning hearing was held on September 3. The permanency-planning order, filed on September 30, kept the goal of the case as reunification but added a concurrent goal of adoption following termination of parental rights. The circuit court found that Elizabeth had been compliant with the established case plan and orders of the court; had made significant, measurable progress toward achieving the goals established in the case plan; and was diligently working toward reunification. The circuit court further noted that while Elizabeth had made progress, her progress had not been consistent. Elizabeth still did not have employment or income and relied on her parents for financial assistance. She did have transportation, although it was not suitable for a young child because it was a single-cab truck. She completed the required parenting classes and visited regularly with P.G. She completed one round of drug-and-alcohol treatment but had to restart due to continued drug use. She was discharged from the second round of treatment

3

due to missing classes and had again restarted. Elizabeth was ordered to an inpatient treatment program but was kicked out on the second day for possessing methamphetamine and offering it to other patients. Also, Elizabeth gave birth to another child in May 2019 who was born with illegal substances in its system and was the subject of a separate dependency-neglect case due to Elizabeth's continued drug use and her concealment of that child from DHS. Elizabeth was ordered to remain clean and sober; submit to random drug screens, alcohol swabs, and hair-follicle tests at DHS's request; visit regularly; and maintain contact with DHS and notify DHS of any changes in contact information or significant life events including, but not limited to, a pregnancy, an arrest, or release from incarceration.

DHS filed a petition to terminate Elizabeth's parental rights on November 20, 2019, and an order was entered terminating Elizabeth's parental rights on the twelve-month failure-to-remedy ground and found that termination was in P.G.'s best interest. This appeal followed.

We review termination–of–parental–rights cases de novo, but we will not reverse the circuit court's ruling unless its findings are clearly erroneous. *Gonzalez v. Ark. Dep't of Hum. Servs.*, 2018 Ark. App. 425, 555 S.W.3d 915. A finding is clearly erroneous when, although there is evidence to support it, the reviewing court on the entire evidence is left with a definite and firm conviction that a mistake has been made. *Id.* In determining whether a finding is clearly erroneous, we have noted that in matters involving the welfare of young children, we defer to the circuit court because of its superior opportunity to observe the parties and judge the credibility of the witnesses. *Rice v. Ark. Dep't of Hum. Servs.*, 2019 Ark. App. 141, 572 S.W.3d 907.

4

Parental rights, however, will not be enforced to the detriment or destruction of the health and well-being of the child. *McKinney v. Ark. Dep't of Hum. Servs.*, 2017 Ark. App. 475, at 16–17, 527 S.W.3d 778, 789. The intent behind the termination-of-parental-rights statute is to provide permanency in a child's life when it is not possible to return the child to the family home because it is contrary to the child's health, safety, or welfare, and return to the family home cannot be accomplished in a reasonable period of time as viewed from the child's perspective. *Id.* Termination cases are unique civil cases because time is viewed from the juvenile's perspective, and the best interest of the children take precedence at every stage of the proceedings. *Id.* Even full compliance with the case plan is not determinative; the issue is whether the parent has become a stable, safe parent able to care for his or her child. *Rice*, 2019 Ark. App. 141, 572 S.W.3d 907. A parent's past behavior is often a good indicator of future behavior. *Id.*

Elizabeth's first argument on appeal is that the circuit court abused its discretion by excluding witness testimony regarding the circumstances surrounding P.G.'s removal from her custody. Counsel for DHS objected to DHS investigator Tehrina Means's testimony on the basis that it would only be regarding P.G.'s initial removal from the home and that Means did not have knowledge of anything related to the termination proceeding. The circuit court sustained the objection, held that the testimony regarding P.G.'s initial removal from the home was not relevant, and that this testimony should have been addressed during the adjudication hearing. It is important to note that Elizabeth did not appeal the adjudication finding. When a party fails to appeal from an adjudication order and challenges the findings therein, she is precluded from asserting error on appeal with respect to those

findings from an order terminating parental rights. *Denen v. Ark. Dep't of Hum. Servs.*, 2017 Ark. App. 473, 527 S.W.3d 772.

This court will not reverse a circuit court's ruling on the admissibility of evidence absent a manifest abuse of discretion. *Hooks v. Ark. Dep't of Hum. Servs.*, 2017 Ark. App. 687, 536 S.W.3d 666. Arkansas Rule of Evidence 401 defines "relevant evidence" as "evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." *Brown*, 2015 Ark. App. 725, at 6, 478 S.W.3d 272, 276. Elizabeth argues that the exclusion of this testimony "undoubtedly had a tendency to make the fact of whether or not Elizabeth had remedied the reason for removal, very much a fact that was of consequence, more or less probable." We disagree. The reason for removal was established early on in this case—parental unfitness. Factual findings made by the circuit court in a previous order do not have to be reproved at a termination hearing. *Terrones v. Ark. Dep't of Hum. Servs.*, 2017 Ark. App. 115, 515 S.W.3d 144. The circuit court did not abuse its discretion by excluding testimony regarding P.G.'s removal, and we affirm.

Elizabeth also argues that the exclusion of this testimony prejudiced her defense to the termination of her parental rights. Even if there is judicial error in an evidentiary ruling, our court will not reverse unless the appellant demonstrates prejudice. *Joslin v. Ark. Dep't of Hum. Servs.*, 2019 Ark. App. 273, 577 S.W.3d 26. Elizabeth fails to demonstrate any prejudice. Exclusion of evidence is not prejudicial if the same evidence was introduced through another source and was before the trier of fact for its consideration. *Howard v. Ark. Dep't of Hum. Servs.*, 2017 Ark. App. 68, 512 S.W.3d 676. Here, the excluded testimony

was that Elizabeth was not at the home when P.G. was removed. During the termination hearing, there was testimony from Officer Lum that established that Elizabeth was not present at the time of removal and had been gone for an hour or an hour and a half. Therefore, the excluded testimony would have been cumulative; thus, no prejudice resulted from excluding Means's testimony.

Elizabeth's second point on appeal is that the failure-to-remedy ground relied on by the circuit court to terminate her parental rights is not supported by any evidence that she failed to remedy the reason for P.G.'s removal. Specifically, she argues that because she was incarcerated when P.G. was removed, P.G. was removed from the physical custody of *her father*, Mark Garner, and the circuit court clearly erred in determining that she failed to remedy the reason for P.G.'s removal.

Proof of only one statutory ground is sufficient to terminate parental rights. *Hollinger v. Ark. Dep't of Hum. Servs.*, 2017 Ark. App. 458, 529 S.W.3d 242. There must be clear and convincing evidence to support one or more statutory grounds found in Ark. Code Ann. § 9-27-341(b)(3)(B) (Supp. 2021). In order to terminate parental rights on the ground of failure to remedy, the circuit court must find

> [t]hat the juvenile has been adjudicated by the court to be dependent-neglected and has continued out of the custody of the parent for twelve (12) months and, despite a meaningful effort by the department to rehabilitate the parent and correct the conditions that caused removal, those conditions have not been remedied by the parent.

Ark. Code Ann. § 9-27-341(b)(3)(B)(i)*(a)*.

The criteria for the first two grounds are easily met in this case, and Elizabeth does not challenge either requirement. Elizabeth's entire argument is based on the third statutory

requirement. – her not being present for P.G.'s removal and whether she contributed to the reasons for her removal. P.G. was removed due to parental unfitness. The adjudication order found that Elizabeth was gone from the home for only one hour and forty-five minutes, that Elizabeth was married to P.G.'s father, and that they shared the same residence. Elizabeth's argument ignores the actual conditions that caused the removal in that both parents maintained a premises for drug sales and manufacturing and had illegal drugs and paraphernalia in an area that P.G. could access.

The circuit court was presented with clear and convincing evidence that Elizabeth failed to remedy the reasons for removal that support the termination of Elizabeth's parental rights. First, Elizabeth failed to complete court-ordered drug treatment, which was initially ordered on December 3, 2018. While Elizabeth did complete the drug-and-alcohol assessment as ordered, she failed to complete the recommended treatment. There was substantial testimony regarding her three failed attempts at outpatient drug treatment and one failed inpatient drug-treatment program. Elizabeth admitted that she was a drug addict and had not followed the circuit court's orders in terms of receiving treatment. Second, Elizabeth failed to submit negative drug screens and submit to hair-follicle tests as required by the circuit court. She had multiple positive drug screens and refused to submit or was unable to provide a sample for other drug screens. Third, Elizabeth had failed to obtain or maintain a stable income as ordered by the circuit court. Testimony presented showed that she was sporadically employed as an independent contractor photographer prior to the COVID pandemic but had very little to show for income and that she had not made any effort to obtain employment. Although she claimed to have made $14,000 in 2018, she was

8

unable to prove that. Accordingly, the circuit court's determination that Elizabeth Garner failed to remedy the reasons for removal was not clearly erroneous. We affirm.

Affirmed.

ABRAMSON and BROWN, JJ., agree.

*Weimar Law Office*, by: *DeeAnna Weimar*, for appellant.

*Callie Corbyn*, Ark. Dep't of Human Services, Office of Chief Counsel, for appellee.

*Dana McClain*, attorney ad litem for minor child.